UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ANGEL ROBERSON, an individual, | NO: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| SEIU HEALTHCARE 1199NW, a Washington labor organization; | |
| Defendants. | |

COMES NOW Angel Roberson ("Plaintiff"), by and through her attorneys Eisenhower Carlson PLLC and John M. Cummings for claims against Defendant, and by way of complaint and cause of action against the named Defendant, states and alleges as follows:

## I.    PARTIES

1.1    Plaintiff Angel Roberson has a primary place of residence in Lewis County, Washington

1.2    Defendant SEIU Healthcare 1199NW ("SEIU 1199NW") is a Washington labor union with a principal place of business in King County, Washington.

COMPLAINT - 1

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street. Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

## II.    JURISDICTION AND VENUE

2

2.1    This Court had original jurisdiction over this matter pursuant to 28 USC § 1331.

3

Defendants have removed to this Court. Ms. Roberson has filed complaints with the Equal

4

Employment Opportunity Commission and asks that this Court retain Jurisdiction at this time in

5

anticipation of a right to sue letter.

6

2.2    Venue is proper before this court pursuant to 28 USC § 1391(b).

7

2.3    Administrative remedies have been exhausted. Plaintiff filed a complaint with the

8

Equal Employment Opportunity Commission ("EEOC"). On November 17, 2025, the EEOC

9

issued Notice of Her Right to Sue ("NRTS") within 90 days of her receipt of that Notice. A true

10

and correct copy of the NRTS is attached as Exhibit P.

11

12

## III.    FACTS

13

3.1    Plaintiff Ms. Angel Roberson worked as a Certified Nursing Assistant at

14

Providence St. Peter Hospital ("St. Peter") for approximately twenty-three (23) years. Prior to that,

15

she worked at least 7 years as a medical assistant at other medical facilities. While she worked at

16

St. Peter, she was an active Member of Defendant SEIU Healthcare 1199NW ("SEIU 1199NW")

17

for approximately 14 years.

18

3.2    In 2008, Ms. Roberson was recruited by SEIU 1199NW Organizer Pamela Briscoe,

19

and Ms. Roberson became involved in representing her department at the bargaining table,

20

identifying grievances, identifying other leaders, and representing others.

21

3.3    Ms. Roberson helped conduct strikes at St. Peter as well as other facilities in

22

solidarity.

23

3.4    Ms. Roberson served as a Bargaining Team member from approximately 2013 to

2020.

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.5    From approximately 2015 to 2020, Ms. Roberson served as a member of the Executive Board of SEIU 1199NW at St. Peter.

3.6    SEIU 1199NW even sent Ms. Roberson to represent the union at a National African American Caucus ("AFRAM") event in New Orleans. AFRAM is a Caucus of SIEU 1199 which is "committed to enhancing opportunities for . . . leadership development . . . for SEIU members and staff of African Descent."

3.7    SEIU 1199NW sent Ms. Roberson to the Institute of Racial Justice, which is committed to "educate generations of leaders and scholars armed with the skills and networks to dismantle racist systems and replace them with inclusive, equitable ecosystems founded on hope and equal dignity for all."

3.8    Ms. Roberson served as a Union Delegate at SEIU 1199NW from approximately 2008 to 2020, a role in which she was a leader in her department, a source of information for workers in their job site, served on staffing committee boards, played an important role in the grievance process, and organized action on behalf of SEIU 1199NW.

3.9    SEIU 1199NW prominently featured — and continues to feature — Ms. Roberson's image and the image of other Black members on its administrative and promotional materials to curate the impression that SIEU 1199NW is inclusive of Black people. For over fifteen (15) years, her image has also been featured prominently on the cover of SEIU 1199NW's New Membership Form.

3.10    Ms. Roberson's son was in a devastating car collision in 2020. She retired from St. Peter in September 2020 to care for him and her granddaughter. SEIU 1199NW quickly recruited Ms. Roberson, and she began to work as a part time Union Organizer on or around February 21, 2021. Her offer was signed by Defendant Casey Rukeyser, who was identified in the offer letter

EISENHOWER
CARLSON PLLC
Attorneys at Law

909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

as "Casey Rukeyser, Executive Vice President." A true and correct copy of Mr. Rukeyser's offer letter to Ms. Roberson is Attached as **Exhibit A**.

3.11    Due to her leadership and history in the union, she was well qualified for the position and excelled within the role. Effective July 5, 2021, Ms. Roberson was promoted to a fulltime position as a Grade V, Year 3 employee. Attached as **Exhibit B** is a true and correct copy of the Employee New Hire/Change of Status Form dated July 29, 2025, from Ms. Roberson's personnel file. Upon her promotion, Ms. Roberson reported directly to SEIU 1199NW's Treasurer Yolanda King-Lowe, and had regular check-ins with then Vice President (now President) Jane Hopkins. President Hopkins and Treasurer Yolanda King-Lowe are both Black women.

3.12    Employees of SEIU 1199SW are themselves part of a separate union, the 1199 NW Staff Union ("Staff Union") has agreed to a collective bargaining agreement  between the Staff Union and SEIU 1199NW. A true and correct copy of the collective bargaining agreement applicable to this case ("CBA") is Attached as **Exhibit C**.

3.13    The CBA was negotiated with the intent to preserve the ability of members of the Staff Union to file anti-discrimination lawsuits should SEIU 1199NW violate Washington's Law Against Discrimination ("WLAD"), Washingtons Equal Pay Act, Washington's Wage Theft Act, Washington's Silenced No More Act, the Equal Employment Opportunity Act, the Federal Equal Pay Act, and the anti-retaliation provisions of each of these acts. It also permits actions for Termination in Violation of Public Policy where the policy is rooted in the above anti-discrimination, wage theft, and equal pay laws.

3.14    Pursuant to Article 5 of the CBA, new employees are awarded service credit for certain activities in which they engaged in before they were hired. It is an experience-based credit that is awarded based on various prior experiences, including: previous employed union experience

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

in a job class which has responsibilities which are comparable to the position in which they are hired, previous employed community, environmental, and political organizing experience, and previous time they were an active Leader-on-Program or an active member of an Organizing Committee when they were rank-and-file Union Members. The credit they are awarded under Article 5 contributes to the employee's "Year" on the pay scale, which in turn affects the amount they are paid. For example, a Grade V employee assigned to the Year 3 step on the payscale in 2021 would earn $65,960.28 annually. Exhibit C at Appendix A – Wages. The payscale for Grade V employees subject to the CBA was as follows:

Grade V - Organizer, Research Analyst, Field Admin, Advocacy & Political Action Specialist, Comm. Specialist

|  | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 | Year 6 | Year 7 | Year 8 |
|---|---|---|---|---|---|---|---|---|
| 1/1/20 3.0% | 55,909.61 | 60,207.62 | 64,508.83 | 68,811.59 | 73,109.65 | 77,412.50 | 81,713.71 | 86,011.77 |
| Biweekly rate | 2,150.37 | 2,315.68 | 2,481.11 | 2,646.60 | 2,811.91 | 2,977.40 | 3,142.84 | 3,308.14 |
| 1/1/21 2.25% | 57,167.57 | 61,562.29 | 65,960.28 | 70,359.85 | 74,754.61 | 79,154.28 | 83,552.27 | 87,947.03 |
| Biweekly rate | 2,198.75 | 2,367.78 | 2,536.93 | 2,706.15 | 2,875.18 | 3,044.40 | 3,213.55 | 3,382.58 |

Lead Premium: $6000 Annually
Lead in Training: $3000 Annually
Administrative Lead: $1.50 per hour
Racial Justice Leadership Premium: $550 one time annually
Senior Assignment : $750 per quarter

*Id.*

3.15    The phrase "Leader-on-Program" is not defined or used elsewhere in the CBA. Rather, SEIU 1199NW was supposed to form a Joint Committee to define this term. As is discussed below, SEIU 1199NW used the phrase "Leader-on-Program" as a pretext for granting step increases to some employees while denying them to similarly situated employees on the basis of race.

3.16    Although Ms. Roberson had been promoted to a full time position effective July 5, 2021, see Exhibit B, SEIU 1199NW failed to pay her a full time salary for weeks. On August 2, 2025, SEIU 1199NW employee Marietta Rendlen emailed Casey Rukeyser notifying him that Ms.

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Roberson had not been paid her full salary and asking for her to be paid her backpay. Upon information and belief, Mr. Rukeyser ignored the email. The following day, Ms. Rendlen forwarded the email to President Jane Hopkins, asking once again for Ms. Roberson to be paid the salary SEIU 1199NW owed her. Finance Manager Han Nguyen was cc'd on these emails as it appears she is the person in charge of ensuring that employees are paid correctly.

3.17    In late 2022, Ms. Roberson was moved from the Providence Team to the South Team serving St. Joseph's and St. Clare's Hospitals. Team lead Laura Dougherty asked what step Ms. Roberson was and Ms. Roberson said she was a Grade V, Year 3 on the payscale. Ms. Dougherty said, "Angel, you should be at the top step because you were a rank-and-file member. You need to ask SEIU 1199NW to do audit of employment." A rank-and-file member is a person who was a union member of SEIU 1199NW before they were hired by SEIU 1199NW and became part of the Staff Union.

3.18    Ms. Dougherty explained that like Ms. Roberson, she had been placed on the wrong step early in her career with SEUI 1199NW. Ms. Dougherty explained that she requested to have her pay adjusted to account for her prior experience. She also explained that SEIU 1199NW readily corrected her step to account for her prior experience and  that they should do the same for Ms. Roberson. Ms. Dougherty is a white woman.

3.19    Ms. Roberson emailed her supervisor Stacey Opiopio requesting an audit of her placement on the payscale. On February 13, 2023, Ms. Roberson sent an email to Ms. Opiopio which read, "Hello Stacey, is there any news about my wage audit? This information would be helpful."

3.20    After Ms. Roberson sent this email and before March 21, 2023, South Team Director Yolanda King-Lowe informed Ms. Roberson verbally that her wage would not be

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

adjusted because Executive Vice President Casey Rukeyser said that Ms. Roberson was not a Leader on Program.

3.21    SEIU defines Leader on Program as someone who has verifiably led people and who has participated in 2 or more union activities within or outside the workplace in the previous two years. SEIU 1199NW trains people to identify leaders on program using this definition. Attahced as **Exhibit D** is a true and correct copy of a training provided by SEIU 1199NW in discovery which defines "Leader on Program" by combining the definition of leader with the definition of activist.

3.22    Ms. Roberson's extensive work as a Union member and organizer more than satisfied the definition of Leader on Program provided in Exhibit D. See, for example, Paragraphs 3.1 – 3.10, above. Moreover, Mr. Rukeyser had access to Ms. Roberson's resume. Attahced as **Exhibit E** is the Resume of Angel Roberson which was in her personnel file at the time Mr. Rukeyser made this decision.

3.23    Ms. Roberson had more experience that Ms. Dougherty and should therefore have had an even easier time getting a wage adjustment.[1] When she was hired in 2021, Ms. Roberson was a certified nursing assistant and medical assistant with 30+ years' experience in multiple hospitals, 15 of which she spent in the Emergency Department. She had 14 years of Union activism and experience and was making $79,499.66 by 2023. When Ms. Dougherty was hired, she had been a housekeeper for one year at Good Samaritan and also served a year on the executive committee of her union before. By 2023, Ms. Dougherty was making $93,529.47 as a topped out Grade V employee of SEIU 1199NW.

---

[1] This is *not* to say Ms. Dougherty did not deserve her adjustment. Ms. Dougherty *did* deserve her adjustment. The point is that Ms. Roberson did as well, and despite being more qualified, Ms. Roberson was denied that chance due to race and gender discrimination.

COMPLAINT - 7

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.24    The disparity between their pay cannot be explained by reference to experience or objective metrics. The primary difference between Ms. Roberson at the time she requested a wage audit and the Ms. Dougherty at the time she requested and received a wage audit was that Ms. Roberson was Black and Ms. Doughtery was white. They were otherwise similarly situated at the times when they made their requests. This pay disparity is best – and only – described as disparate treatment motivated by racial and gender animus and discrimination.

3.25    Mr. Rukeyser's and SEIU 1199NW's decision to deny Ms. Roberson a pay adjustment while readily giving one to a similarly situated white woman was motivated by racial animus and discrimination on the basis of race and color.

3.26    On March 21, 2023, Ms. Roberson filed a grievance. Pursuant to Article 17 of the CBA, the grievance procedure is a three-step process which is to be followed if informal communication does not remedy the employee's concerns. The Staff Union represented Ms. Roberson during the process. Attached as **Exhibit F** is a true and correct copy of the Grievance Ms. Roberson filed regarding her improper placement on the pay scale. SEIU 1199NW denied this grievance via Stacey Opiopio. Because the CBA does not contain anti-discrimination provisions, it would not have been appropriate to pursue a race or gender discrimination claim pursuant to the grievance procedures of the CBA. The discrimination claims remain viable for this Action. See *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 862-64 (9th Cir. 1979).

3.27    On May 12, 2023, Mr. Rukeyser was accused of making a racist joke at work. An investigation was conducted by a third party. The investigation found no evidence he had made a racist joke.

3.28    Ms. Roberson escalated the grievance to the second step. On May 25, 2023, Ms. Roberson presented a PowerPoint to the Ms. King-Lowe providing proof she was a leader on

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Program and had sufficient expertise to have her pay adjusted to Year 8. A true and correct copy of that PowerPoint presentation is attahced as **Exhibit G**. In addition to playing the PowerPoint, Ms. Roberson presented argument to Ms. King-Lowe. On June 5, 2023, Ms. King-Lowe denied the grievance for the second step. Attached as **Exhibit H** is a true and correct copy of the letter signed by Ms. King-Lowe in which she wrote that the Staff Union "failed to provide facts sufficient to demonstrate that the Employer is in violation of credit for past experience provisions."  The SEIU 1199NW did not specifically address whether Ms. Roberson was a "Leader-on-Program," but the denial suggests it concluded she was not.

   3.29 Step 3 of the CBA Grievance procedure required Ms. Roberson to ask the Staff Union to escalate the matter to Arbitration. In preparation to do so, Ms. Roberson requested a letter from Pamela Briscoe – the person who recruited her to work at SEIU 1199NW – explaining Ms. Roberson's longtime commitment to unions activities as proof Ms. Roberson was a leader on program. Ms. Briscoe wrote an email on July 1, 2023, detailing Ms. Roberson's longtime commitment. Attahced as **Exhibit I** is an email exchange containing that statement, which read,

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street. Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Re: Angel Roberson

To Whom It May Concern:

I started working for SEIU 1199 NW in 2007. In 2008 I recruited Angel Roberson from the Emergency Department at Providence St Peter Hospital.

Angel stepped up to be the first delegate to represent the Emergency Department. Angel became involved in every way from identifying other leaders, representing her department at the bargaining table, identifying grievances, and representing others. Angel also helped with strikes at St Peters, but also for other facilities in solidarity.. She spoke as the leader she is.

Angel has experienced all aspects of leadership with grace and confidence..I understand there have been questions regarding her total years experience. Angel attended and participated on the Executive Board, and did everything asked of her including phone banking since 2008.

In Solidarity,

Pam Briscoe

*Id.*

  3.30 At the July or August 2023 Staff Union meeting, Ms. Roberson requested the Staff Union escalate her grievance to Step 3 and authorize arbitration. The Staff Union did not vote to authorize arbitration.

  3. 31 When the Staff Union voted not to proceed with a Step 3 grievance, Ms. Roberson asked the members if anyone had also been denied credit for being rank-and-file members before becoming Staff of SEIU 1199NW. Approximately seven (7) other women raised their hands to indicate that they had also been denied experience-based credit in violation of Article 5 of the CBA, allowing SEIU 1199NW to underpay them. Of those seven, five (5) were women of color. These women included Felicia Sylvia (a woman of color), Tarabia Franklin (a Black woman), Melissa Hawkins (a white woman), Lenay Jackson (a Caribbean woman), and Darlene Johanson.

  3.32 No men raised their hands when Ms. Roberson asked whether anyone had been denied rank-and-file credit. The disparate pay fell only on women Staff Union members.

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1    3.33    SEIU 1199NW's decision to deny these women a pay adjustment was not

2    motivated by rational or economic reasons. Ms. Roberson was one of the most senior rank-and-

3    file members hired by SEIU 1199NW who worked there at the time. motivated by racial and

4    gender animus and discrimination in violation of state and Federal law.

5    3.34    On August 30, 2023, members of the Staff Union Joint Committee met to discuss

6    the fact that women – and especially women of color – were being denied pay adjustments they

7    had earned and should have been given. The Staff Union members of the Joint Committee included

8    Angel Roberson, Sulon Mlynarek, Joyce Sinahahone, and Jacquelin Olivas. Attached as **Exhibit**

9    **J** is a true and correct copy of an email in which Ms. Roberson expresses these concerns to the

10    Staff union membership.

11    3.35    After August 30, 2023, but before November 2023, Ms. Roberson and other Staff

12    Union Members met with, among others, President Hopkins and Mr. Rukeyser to express concerns

13    that rank-and-file members were being placed on the wrong step on the payscale on the basis of

14    race and gender. Ms. Roberson spoke up during the meeting and related it back to her grievance

15    and her own experience. She specifically noted that SEIU 1199NW and its leadership were

16    disadvantaging employees on the basis of race and gender. These reports of gender and race

17    discrimination are protected activity under Washington and Federal laws.

18    3.36    These complaints by Ms. Roberson and the Staff Union led to the creation of

19    Leaders on Program lists, which were lists of rank-and-file members who were Leaders on

20    Program. The hope was to identify rank-and-file members who, should they later become Staff

21    Union members, would receive credit when they were placed on the payscale. A true and correct

22    copy of such an email distributing these lists is attahced as **Exhibit K**.

23

COMPLAINT - 11

EISENHOWER
CARLSON PLLC
Attorneys at Law

909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.37    Thus, although Defendants remedied for the future the system that had harmed Ms. Roberson on the basis of race and gender, they took no steps to remedy the race and gender discrimination she was still experiencing by dint of her lowered pay.

3.38    Moreover, SEIU 1199NW leadership, President Hopkins, and Mr. Rukeyser began retaliation against Ms. Roberson for her report of the gender and race discrimination that she had experienced and that others had experienced. Prior to filing the time Ms. Roberson filed her grievance and spoke out against race and gender discrimination and pay inequities, President Hopkins was communicative and friendly toward Ms. Roberson. After the grievance was filed and Ms. Roberson spoke up, however, President Hopkins did not speak to Ms. Roberson even when it would have served the Union and the task at hand.

3.39    From November 2023 until her termination in January 2025, Ms. Roberson was the second chair for negotiations between SEIU 1199NW and St. Joseph's and St. Clare's Hospitals. Laura Dougherty was first chair at this time. President Hopkins and Ms. King-Lowe would regularly attend sessions in which Ms. Roberson and Ms. Doughtery were negotiating. President Hopkins and Ms. King-Lowe ignored Ms. Roberson each time they came to the negotiations. They gave her the silent treatment despite the fact Ms. Roberson was an essential member of the bargaining team and it would serve the best interests of SEIU 1199NW to speak with and strategize with Ms. Roberson. President Hopkins and Ms. King-Lowe openly and readily spoke to Ms. Dougherty, the white colleague of Ms. Roberson.

3.40    Union members noted the silent treatment that was being directed at Ms. Roberson and even commented on it, asking Ms. Roberson why President Hopkins and Ms. King-Lowe were ignoring her. One such member was Charney Chambers.

EISENHOWER CARLSON PLLC    909 A Street, Ste. 600
Attorneys at Law    Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.41    Staff union colleague Melissa Hawkins also observed that President Hopkins and Ms. King-Lowe would shun Ms. Roberson at SEIU 1199NW social events at which all employees were present.

3.42    In March 2024, Finance Manage Han Nguyen falsely claimed that a member had told her that Ms. Orberson was violating company vacation policies. An investigation revealed that the member said no such thing.

3. 43    These retaliatory actions caused Ms. Roberson significant stress which led to illness and caused her to miss work.

3.44    From July 16-18, 2024, the Washington State Labor Council held a statewide convention. Ms. Roberson attended and so did her aunt, Sara Wilson. Charney Chambers and her husband were also present. Ms. Wilson, Ms. Chambers, and Mr. Chambers all remarked at how obviously President Hopkins and Ms. King-Lowe were shunning and giving the silent treatment to Ms. Roberson.

3.45    On September 16, 2024, Ms. Roberson's Counsel sent a demand to SEIU 1199NW on behalf of Ms. Roberson in which he alleged SEIU 1199NW had engaged in race and gender discrimination and wage theft. A true and correct copy of this demand – with redaction of dollar amounts – is attahced as **Exhibit L**. Confronting an Employer about discriminatory behavior is protected activity under WLAD and EEOA.

3.46    President Hopkins, Ms. King-Lowe, and Mr. Rukeyser continued to shun Ms. Roberson and give her the cold shoulder. She felt ostracized by their behavior.

3.47    From September 16, 2024, until  December 4, 2024, Ms. Robertson's counsel attempted to contact and communicate with Carson Flora, attorney for SEIU 1199NW. A true and correct excerpt of those emails with Attached subpoena are Attached as **Exhibit M**.

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.48    Carson Flora ignored Ms. Roberson's counsel's emails. Ms. Roberson initially filed this lawsuit in King County Superior Court on December 4, 2024 ("King County Lawsuit"). In the final email sent on December 4, 2024, Ms. Robertson's counsel enclosed a complaint, discovery requests, and a subpoena compelling the appearance of Case Rukeyser at a deposition on January 27, 2025. The filing of a discrimination lawsuit and issuing of subpoenas are protected activity under State and Federal non-discrimination laws.

3.49    Defendant SEIU 1199NW removed the King County Lawsuit to this Court on December 24, 2024. That matter was assigned Cause Number 2:24-cv-02138.

3.50    On Wednesday, January 22, 2025, Ms. Roberson was working at a lobby day in Olympia Washington along with other colleagues of SEIU 1199NW. Ms. Roberson was attending an Executive Board Meeting of SEIU 1199NW, and a break was called. Union member Lonnie Pitts approached Ms. Roberson to explain she was having some trouble with being double charged for parking at the meeting venue, and Ms. Roberson began walking with her to the parking lot to address the problem.

3.51    A staff member named Kenia then began calling Ms. Roberson's name. Kenia was standing next to President Jane Hopkins at the time. Ms. Roberson turned, and Kemia asked where Ms. Roberson was going. Ms. Roberson asked why she was asking that. Kemia said President Hopkins wanted to know. Ms. Roberson looked at President Hopkins and said, "If you want to know where I am going, you can ask me."

3.52    President Hopkins did not answer Ms. Roberson, so Ms. Roberson began walking to the parking lot to assist union member Ms. Pitts, who had approached her. President Hopkins then yelled Ms. Roberson's name, and Ms. Roberson returned to President Hopkins. Ms. Roberson began to ask President Hopkins a question, but President Hopkins interrupted her and began yelling

EISENHOWER
CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

that Ms. Roberson was being insubordinate and disrespectful. Ms. Roberson left after President Hopkins was finished yelling at her in front of her colleagues.

3.53    Ms. Roberson continued to work throughout the meeting, doing as she was told and assisting with tidying and coordination. After she had continued to work, Ms. King-Lowe sent Ms. Roberson home early. Ms. King-Lowe told Ms. Roberson she would be paid for the day and that she was not being disciplined.

3.54    President Hopkins's mistreatment of Ms. Roberson at lobby day was motivated by race discrimination, gender discrimination, and retaliation for reporting gender and race discrimination and filing a gender and race discrimination lawsuit. The fact that this occurred just three business days before Mr. Rukeyser was due to be subpoenaed is further evidence of this motivation.

3.55    On January 24, 2025, Ms. Roberson filed a grievance for the inappropriate behavior of President Hopkins. A true and correct copy of this grievance is Attached as **Exhibit N**. The filing of a complaint reporting discrimination and retaliation is protected activity under Washington and Federal law.

3.56    Prior to 1:30 p.m. that same day, SEIU 1199NW Executive Vice President Casey Rukeyser sent Ms. Roberson an offer which attempted to Settle this Action. Mr. Rukeyser and the other leaders of SEIU 1199NW knew that Ms. Roberson was represented by counsel, but they did not seek to negotiate with her through counsel. The proposed severance contained a non-disclosure clause which prohibited disclosure of a broad array of information about SEIU 1199NW, directing Ms. Roberson not to disclose any of the discrimination she experienced or reported if it touched on "operations, projects, members, suppliers, trade secrets, strategies, including but not limited to the following: financial information; techniques, technology, practices, methods of conducting

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

business, information technology systems, published and unpublished know-how, research projects, products, legal affair, and future plans" unless that information were already publicly known. Although it permitted her to file charges with the EEOC and governmental regulatory agencies, it did not permit her to freely discuss her experiences of discrimination in any other format as contemplated by Washington's Silenced No More Act, RCW 49.44.211. Upon information and belief, the metadata of the Microsoft Word document containing the proposed severance was modified by Casey Rukeyser at 1:23 pm on January 24, 2025. Attached as **Exhibit O** is a true and correct copy of the offered severance and the properties menu showing the metadata associated with the file sent to Ms. Roberson.

3.57    At 1:30 pm that same day, SEIU 1199NW terminated Ms. Roberson's employment in a meeting with union representative Laura Dougherty and also Stacey Opiopio and Penny Lowry. Ms. Roberson and Ms. Dougherty asked why Ms. Roberson was being terminated. They were told that it was because of the incident on January 22, 2025. Ms. Opiopio did not have the authority to fire Ms. Roberson on her own. Here termination as authorized by Jane Hopkins. Ms. Roberson does not believe Ms. Opiopio wanted to terminate Ms. Roberson; the directive came from President Hopkins.

3.58    SEIU 1199NW later claimed that it terminated Ms. Roberson because she was undermining leadership. In truth, she was terminated because she experienced and reported race and gender discrimination, engaged in protected activity by making those reports, filing suit, alleging further race discrimination, and blowing the whistle on a pattern of gender and race discrimination that led to the underpayment of women and especially the underpayment of women of color.

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

3.59    On April 15, 2025, Ms. Roberson filed an inquiry with the Equal Employment Opportunity Commission (EEOC) alleging federal race, sex, and color retaliation and wage violations.

3.60    On August 25, 2025, the Court stayed Case Number 2:24-cv-02138, ordering Plaintiff to submit a Third Amended Complaint and further ordering that the Stay on those proceedings would last until a motion regarding the Third Amended Complaint in that case had been decided. That motion is pending before the Court under that Case Number.

3.61    On November 17, 2025, the EEOC issued Notice of Her Right to Sue ("NRTS") within 90 days of her receipt of that Notice. Ex. P. Time is running out on Ms. Roberson's NRTS deadline, but the Stay remains on Case Number 2:24-cv-02138 and there is a pending Motion with regard to the Third Amended Complaint in that case. She thus must file this suit with the understanding that it will likely have to be Consolidated with Case Number 2:24-cv-02138 when the Stay in that Matter has been lifted.

3.62    Ms. Roberson has been proximately and actually harmed in an amount to be determined at trial by the Defendants to this matter.

## IV.    JURY DEMAND

4.1    Plaintiff requests and demands trial by jury. Plaintiff will file a separate pleading and pay requisite filing if required by local rule.

## V.    FIRST CAUSE OF ACTION: RACE AND SEX DISCRIMINATION
### (42 U.S.C. § 2000e-2)

5.1    Plaintiff re-alleges and incorporate all previous paragraphs.

5.2    From the time they hired Ms. Roberson until the time they terminated her, Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a)

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

based on her status as Black woman including but not limited to the following separate courses of conduct: (a) hostile work environment; (b) discrimination in the terms and conditions of employment in the form of both disparate impact and disparate treatment; (c) retaliation; (d) constructive discharge; and (e) wrongful discharge

5.3     "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor[.]" *Burlington Industries, Inc.*, 524 U.S. at 764-65.

5.4     **Disparate Treatment and Disparate Impact**.

Disparate treatment claims require showing that the employer treated the employee differently from similarly situated employees. *See Haubry v. Snow*, 106 Wn. App. 666, 676 (2001). Discrimination via disparate treatment occurs where the employee (1) is within a protected group, (2) suffers an adverse employment action, (3) is doing satisfactory work, and (4) is treated differently than an employee outside the protected group. *Hill*, 144 Wn.2d at 181, n.2 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1982); *McDonnell Douglas*, 411 U.S. at 802; *Grimwood v. Univ. of Puget Sound*, 110 Wn.2d 355, 363, 753 P.2d 517 (1988)); *Johnson v. Dep't of Soc. & Health Servs.,* 80 Wn. App. 212, 227, 907 P.2d 1223 (Div. II, 1996) ; *Wallace v. Grant Cty. Fire Dist. No. 5*, 2016 WL 5886880, at *7. Once an employee makes a prima facie showing of race discrimination, the burden shifts to the employer to prove legitimate reasons for the adverse employment action, which can be refuted if the so-called legitimate reasons are merely a pretext. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 490-91, 859 P.2d 26 (1993).   *Blackburn v. State*, 186 Wn.2d 250, 375 P.3d 1076 (2016). An adverse employment action is one which a reasonable employee would find to have "dissuaded a reasonable worker from" reporting the misconduct. *Boyd v. State, Dept. of Social and Health*

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Services, 187 Wn. App. 1349 P.3d 864 (2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). "disparate impact analysis is in principle no less applicable to subjective employment criteria." *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 990, 108 S.Ct. 2777 (1988) (interpreting Title VII). The following facts, among others, support Ms. Roberson's claims of Disparate Treatment and Disparate Impact:

    5.4.1   Plaintiff is a Black woman who is as qualified or more qualified than Ms. Dougherty, a white woman.

    5.4.2   The above referenced supervisors treated Ms. Roberson differently than Ms. Dougherty by placing her higher on the pay scale, promptly and readily adjusting her step on the payscale to account for her previous experience, speaking to Ms. Dougherty while shunning Ms. Roberson, inventing false claims about Ms. Roberson, starting a fight with Ms. Roberson, and terminating Ms. Roberson.

    5.4.3   Ms. Roberson was doing satisfactory work in her position.

    5.4.4   Defendant and above referenced supervisors treated Ms. Dougherty disparately better by adjusting her pay, not yelling at her, speaking to her politely, paying her a substantially higher salary year-after-year, and not terminating Ms. Dougherty, among other treatment.

    5.4.5   As a resultant and proximate cause of Defendant's conduct, Plaintiff has suffered injuries and damages, including economic loss and emotional distress in an amount to be proved at trial.

    5.5   **Hostile Work Environment**. To establish a federal claim under Title VII, a plaintiff must prove: (1) she or he was "subjected to verbal or physical conduct of a [] harassing

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

nature," (2) "this conduct was unwelcome," and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an [objectively and subjectively] abusive working environment." Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir.1995). Ninth Circuit Model Civil Jury Instructions 10.5. The plaintiff must also: (4) establish employer liability. Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013). The following facts, among others, support Ms. Roberson's claim of Hostile Work Environment:

5.5.1    Plaintiff is a Black woman.

5.5.2    All above referenced supervisors treated Ms. Roberson differently than Ms. Dougherty by placing her higher on the pay scale, promptly and readily adjusting her step on the payscale to account for her previous experience, speaking to Ms. Dougherty while shunning Ms. Roberson, inventing false claims about Ms. Roberson, starting a fight with Ms. Roberson, and terminating Ms. Roberson. This harassment was unwelcome.

5.5.3    The unwelcome actions toward Ms. Roberson were motivated by gender and race, as evidenced by the fact that only women were treated in this way, that women of color were more likely to suffer these actions than white women, and that the hostility of the workplace increased as Ms. Roberson continued to speak out against race and gender discrimination, file complaints, and allege discrimination against Mr. Rukeyser, President Hopkins, and SEIU 1199NW.

5.5.4    The actions affected Ms. Roberson's terms and conditions of employment by decreasing the pay she took home for each paycheck and the pay she would take home in the future, creating an environment in which she felt

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1    ostracized and yelled at, humiliated her in front of her peers, sent her home

2    from work, and ultimately terminated her employment.

3    5.5.5    The actions are imputable to Defendants because they were approved of or

4    taken by SEIU 1199NW as an entity and by President Hopkins and Mr.

5    Rukeyser personally.

6    5.5.6    As a resultant and proximate cause of Defendant' conduct, Plaintiff has

7    suffered injuries and damages, including economic loss and emotional

8    distress in an amount to be proved at trial.

9    5.6    The effect of Defendants' practices has been to deprive Ms. Roberson of equal

10   employment opportunities and otherwise adversely affect her status as an employee of Bonneville

11   Hot Springs because of her race, color, and sex.

12   5.7    Defendants' unlawful employment practices were intentional.

13   5.8    As a direct and proximate result of the violation of 42 U.S.C. § 2000e-2(a) by

14   Defendants, Ms. Roberson has incurred and will to continue to incur damages for lost wages and

15   benefits, loss of earning capacity, emotional distress, pain and suffering, humiliation,

16   inconvenience and loss of enjoyment of life, as well as other special and general harm, in an

17   amount to be proven at trial.

18   5.9    Defendants are also liable for an assessment of punitive damages, due to their

19   violations of 42 U.S.C. § 2000e-2(a), and their malicious and reckless conduct in doing so, in an

20   amount to be proven at trial.

21

22

23

EISENHOWER CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

## VI.     SECOND CAUSE OF ACTION: RETALIATION (42 U.S.C. § 2000e-3)

6.1     Plaintiff re-alleges and incorporate all previous paragraphs.

6.2     From the time they hired Ms. Roberson until the time they terminated her, Defendants engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. §§ 2000e-3(a) by subjecting Ms. Roberson to harassment and retaliation because of her complaints of a race and gender discrimination and pay inequity, disparate treatment, and hostile work environment. These unlawful employment practices included, but were not limited to, retaliatory discharge.

6.3     As a direct and proximate result of the violation of 42 U.S.C. § 2000e-3(a) by Defendants, Ms. Roberson has incurred and will to continue to incur damages for lost wages and benefits, loss of earning capacity, emotional distress, pain and suffering, humiliation, inconvenience and loss of enjoyment of life, as well as other special and general harm, in an amount to be proven at trial.

6.4     Defendants are also liable for an assessment of punitive damages, due to their violation of 42 U.S.C. § 2000e-3(a), and their malicious and reckless conduct in doing so, in an amount to be proven at trial.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1.     For judgment against Defendant for lost wages, wrongfully withheld wages, lost future earnings, civil penalties, and non-economic damages to be proven at trial and to the extent allowed by law and equity;

2.     For Plaintiff's costs, disbursements, and reasonable attorneys' fees pursuant 42 U.S.C. § 2000 et seq.

3.     For prejudgment interest;

EISENHOWER
CARLSON PLLC
Attorneys at Law

909 A Street, Ste. 600
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

4.    For judgment jointly and severally against Defendants for Plaintiffs' actual damages;

5.    For money damages to compensate Plaintiffs for their emotional distress and other general damages as allowed for by law or equity;

6.    For punitive damages as authorized by 26 U.S.C. 206, 42 U.S.C. 2000e et seq.; and

7.    For such other and further relief as the Court deems just and equitable.


DATED this 17th day of February 2026.

EISENHOWER CARLSON PLLC


By: _____

John M. Cummings, WSBA #40505
jcummings@eisenhowerlaw.com
Attorneys for Plaintiffs

909 A Street, Suite 600
Tacoma, WA 98402

COMPLAINT - 23

EISENHOWER
CARLSON PLLC
Attorneys at Law
909 A Street, Ste. 600
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com